Robert W. CORMACK, et al., Plaintiff,

v.

SUNSHINE FOOD STORES, INC. a Michigan Corporation, et al., Defendants.

Civ. A. No. 84CV2963DT.

United States District Court, E.D. Michigan, S.D.

July 29, 1987.

William J. Schramm, Mt. Clemens, Mich., for plaintiff.

Kenneth A. Flaska, Detroit, Mich., for defendants.

## SUPPLEMENTAL MEMORANDUM

DeMASCIO, District Judge.

On May 1, 1987, the court entered Findings of Fact and Conclusions of Law holding defendants liable for willful infringements of plaintiffs' copyrights in the T.A. Survey and E.S. Survey, written tests designed to detect honesty and emotional status, respectively, in the workplace. In the memorandum I awarded $50,000 in statutory damages and $25,000 in punitive damages.

Defendants have filed a motion pursuant to Local Rule 17 of the United States District Court, requesting the court to strike the $25,000 punitive damage award. They assert that punitive damages may only be awarded in common law copyright actions, not for claims under the Copyright Act of 1976. Defendants' assertion is entirely correct. Without attempting an explanation of the error, I note that all cases that have awarded punitive damages for copyright infringement have been in common law actions.[1] Plaintiffs' complaint in this cause pleads only a statutory copyright violation. Accordingly, the judgment will be amended to strike the award of punitive damages.

The plaintiffs have also filed a motion "To Correct Errors and Omissions in the

---

1. In response to defendant's motion to amend the judgment, the plaintiffs admit that punitive damages are not allowable under the copyright act, but contend instead that the court awarded punitive damages because defendants willfully misrepresented to the court that their infringements ceased in 1984, when in fact acts of infringement continued up to the second day of trial. In fact, that was not the court's motivation in awarding punitive damages. Had I intended to sanction defendants for misbehavior, I would have done so under Fed.R.Civ.P. 11.

Judgment" pursuant to Fed.R.Civ.P. 60(a). They argue—for the first time—that they are statutorily entitled to an award of $50,-000 for the willfull infringement of each of their copyrights, since the court found that the defendants willfully infringed both the T.A. Survey and E.S. Survey.[2]

In response, defendants concede that the statutory damage award may be multiplied by the number of copyrighted "works" infringed. In this case, however, defendants contend that plaintiffs' damages are controlled by 17 U.S.C. § 504(c)(1) which provides that, for the purpose of computing statutory damages "all the parts of a compilation or derivative work constitute one work."[3] In support, defendants rely upon plaintiffs' testimony at trial that the two tests were sold as a package and that both tests were part of the Personnel Security Preview Survey System. As such, defendants argue, the two copyrighted tests constitute one "compilation" (specifically, a "collective work") for which a single statutory damage award is authorized.

A concise explanation of this issue is found in Historical Note 3 to 17 U.S.C. § 504 which states:

Where the suit involves infringement of more than one separate and independent work, minimum statutory damages for each work must be awarded. For example, if one defendant has infringed three copyrighted works, the copyright owner is entitled to statutory damages of at least $750 and may be awarded up to $30,000. Subsection (c)(1) makes clear,

however, that although they are regarded as independent works for other purposes, "all the parts of a compilation or derivative work constitute one work" for this purpose. Moreover, although the minimum and maximum amounts are to be multiplied where multiple "works" are involved in the suit, the same is not true with respect to multiple copyrights, multiple owners, multiple exclusive rights, or multiple registrations.

Thus, I must first decide whether plaintiffs' two copyrighted tests constitute one "work" for the purposes of awarding damages under the Copyright Act of 1976. If they do not, then statutory damages must be awarded for the willfull infringements of each of the two copyrights. This was the holding of the Supreme Court in the early case of *Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499 (1919). The Court pointed out that "Each copyright is treated as a distinct entity, and the infringement of it as a distinct wrong to be redressed through the enforcement of this liability.... the plain import of the statute is that this liability attaches in respect of each copyright that is infringed." *Id.* at 105, 39 S.Ct. at 195. *See also, Robert Stigwood Group Ltd., v. O'Reilly*, 530 F.2d 1096, 1103–05 (2d Cir. 1976).

◼ In light of this, the court is required to determine whether the tests at issue are part of a "compilation" constituting one "work," as the defendants contend, or dis-

---

**2.** Plaintiffs also contend that the judgment must be amended because the Clerk of the Court mistakenly awarded a lump sum of $50,000 in statutory damages, when in fact the Court intended to award the maximum damage figure for each copyright infringed by the defendants. In reality, however, the Clerk of the Court did not and could not enter a money judgment in a disputed matter.

**3.** The relevant terms involved here are defined in 17 U.S.C. § 101:

A "collective work" is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole. A "compilation" is a work formed by the collection and assembling of preexisting materi-

als or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

. . . . .

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

tinct works which the defendants infringed separately, and for which separate statutory awards are mandated. It was error to have omitted this issue from the Findings of Fact and Conclusions of Law filed May 1, 1987.[4]

This very issue was addressed in this district in the case of *Kepner–Tregoe, v. Caribio*, 203 U.S.P.Q. 124 (1979). That case dealt with the alleged misappropriation of certain management training materials. The materials were copyrighted under three separate copyrights. One set of material was aimed at middle and top level executives, while another was aimed at front-line managers and supervisors. The third copyright covered materials used to instruct the teachers who conducted the training programs to which the first two sets of copyrighted materials related.

Defendant argued that all of these materials had been "compiled" by the plaintiff into a single "work," and that therefore only one award of statutory damages was permitted. Judge Feikens rejected such a restricted approach, and adopted a functional anaylsis based on the relationship between the separate copyrights, the materials protected, and the ultimate purpose(s) of the protection afforded. The issue "is generally determined by the objective of each separate copyright; would each be viable if not presented in conjunction with the other related copyrights. 3 Nimmer at § 14.04[E][1]" *Id.* at 138. The court found that, because of their different objectives— the training of different types of personnel—the materials covered by the first two copyrights were distinct "works," each capable of separate infringement. The teacher instruction material, however, could have no purpose apart from one or the other of the management training materials. In the words of the Second Circuit, they could not "live their own copyright life." *Stigwood, supra,* at 1105. Adding them to the first two sets of copyright materials yielded three copyrights, to be sure, but still only two "works," to each of which the teacher instruction material was inseparably connected.

The *Stigwood* case involved infringement of the rock opera "Jesus Christ Superstar," and several of the individual musical compositions contained therein. Each of the compositions was covered by its own copyright. The opera itself was covered by three different copyrights, one for the original libretto, one for a revised libretto, and one for the vocal score. Here, too, a functional anaylsis was adopted. The court held that each song's copyright was distinct in *purpose* from the copyrights of every other song, and also from the copyright of the opera as a whole (and vice-versa). The opera as well as each song, therefore, were "works" that could be separately infringed. However, the three copyrights that covered the opera as a whole all shared a *single* protective purpose. Hence, it didn't matter whether the defendant had infringed only one, or two, or all three of these copyrights; only one "work" or "compilation" had been infringed.

In both *Kepner–Tregoe* and *Stigwood,* the courts set forth what I believe is the correct test. When two copyrights cover two arguably related materials, the court must determine whether each copyright serves an independent protective purpose, or whether one of the copyrights serves a dominant purpose that cannot be substantially accomplished apart from the protection afforded by the other. Only in

---

4. The issue now comes before the court on plaintiffs' motion under Rule 60(a). Under that Rule, an error "arising from oversight or omission" may be corrected by the court unilaterally and without prior notice, or upon motion by a party. *See Chavez v. Balesh,* 704 F.2d 774 (5th Cir.1983). A correction of a "mistake" may be made under Rule 60(b)(1), but only upon a motion on notice, by either the court itself or a party. *See McDowell v. Celebrezze,* 310 F.2d 43 (5th Cir.1962). Whether the issue arises in this case because of an "oversight or omission" or a "mistake" is of little practical consequence, as either Rule 60(a) or Rule 60(b)(1) is available to plaintiffs at this time, and the remedy will be the same in either event. Plaintiffs have chosen to characterize the relief they seek as a correction of an "omission" under Rule 60(a). We think this is a reasonable approach, especially since the "omission" complained of is practically of the same character as the omission corrected by the court, *sua sponte,* under Rule 60(a) in *Chavez, supra.*

378

the latter case can one of the works be regarded as merely a part of a "compilation" for purposes of 17 U.S.C. § 504(c)(1).

■ In this case, the defendants contend that the plaintiffs are not entitled to a damage award for each of the two copyrights willfully infringed because "the two copyrights were compiled into a multi-part testing system." Defendants' Brief in Opposition to Plaintiffs' Motion to Correct Errors and Omissions, p. 2. This misses the point. Merely because two works of authorship can be enjoyed more effectively in tandem, it does not mean that each has thereby lost its own identity as a work. The combining of three one-act plays in a single volume is generally not regarded as a new work of authorship. Nimmer on Copyrights at § 3.02. But even if it were, defendants misapprehend the significance of a "compilation." That two separately protectible works of authorship, A and B, are joined in a copyrightable "compilation" C, means no more than that, perhaps, there can be no separate infringements of A *and* C (or B *and* C); it does *not* mean that A *and B* can no longer be infringed separately. There is nothing in the law of intellectual authorship whereby the addition of a third work of authorship to two independent and preexisting works of authorship will yield only one work of authorship. *See generally, Stigwood, supra,* at 1103–05.

I find, however, that this case is much easier than *Stigwood,* because here there is no third copyrightable work in existence, and therefore no potential "compilation" to worry about for the purposes of 17 U.S.C. § 504(c)(1). While it is true that "a compilation consists merely of the selection and arrangement of preexisting material without any material changes," Nimmer on Copyrights at § 3.02, the resulting work as a whole must also constitute an original work of authorship. 17 U.S.C. § 101. The supposed compilation involved here, if it is a compilation at all, would be classified as a "collective work."[5] Yet, "a collective work does not result 'where relatively few sepa-

rate elements have been brought together ... such as a composition consisting of words and music, a work published with illustrations or front matter, or three one act plays....'" Nimmer on Copyrights at § 3.02 (quoting H.Rep. No. 94–1476, p. 122), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5737 (footnote omitted). As the analysis of the differences between the T.A. Survey and the E.S. Survey, *infra,* should make clear, the "arrangement" of the two tests in a manner that merely facilitates their use in tandem requires no new exercise of authorial judgment, selection or discretion. Its execution, so far as the court can determine, requires no more than the affixing of a staple or a paper clip.

Defendants also stress the fact that plaintiffs sold the tests to defendants "as a compiled, packaged set." The defendants do not cite any authority for the conclusion that merely because two copyrighted works are sold to the same purchaser, pursuant to a single agreement, they are thereby "compiled into a single work." Defendants' Brief in Opposition at 4. The marketing of copyrighted matter may be relevant as *evidence* in cases where it is not otherwise possible to determine the respective protected purposes of two or more copyrights. Marketing, however, is not a part of authorship. The ultimate issue, therefore—whether there are one or two works of authorship—does not depend on the marketing strategies adopted by the copyright owner.

It is clear that the T.A. Survey and the E.S. Survey are separate works of authorship, each capable of living its "own copyright life," and each therefore separately and distinctly protected by its own copyright. Each test is designed to evaluate different employee traits. The tests have no questions in common, and no section of either of the tests has any reference or relation back to any section of the other test. The scoring of one completed test requires no prior or concurrent evaluation of any results obtained from the other test.

Nimmer on Copyrights at § 3.02 (footnotes omitted).

---

5. "Those compilations which consist of contributions which themselves constitute 'works' capable of copyright are called collective works."

Each test is accompanied by its own written instruction sheet. The two tests can be ordered by use of the same purchase form, but are listed and priced separately on that form.

While defendant Sunshine, because of the nature of its business, may have needed to acquire and administer the tests as a unit or package, it is clear that many other businesses could find a use for one of the tests but not the other. This defendants' employees happen to deal with the public on a cash basis. A business whose employees deal with the public on a non-cash basis might find only the E.S. Survey useful, while a company seeking a new bookkeeper might care only about the results of the T.A. Survey.

In any event, it appears that even these defendants treated the tests as separate entities. They utilized separate title pages for each test, and required employee-applicants to complete each test separately and sign separate affirmation sheets. The defendants no doubt attached different weights to the two tests, depending upon the duties of the employee being tested.

In conclusion, I am pursuaded that the plaintiffs' two copyrights protect two separate and distinct works of authorship, that they do not pertain merely to two connected parts of a single "compilation" or "collective work," nor to an original and "derivative" work. Moreover, the evidence establishes that the defendants willfully infringed both of these copyrighted works of authorship.

Accordingly, an amended judgment will be entered striking the award of punitive damages, and awarding the plaintiffs statutory damages for the infringement of each of its two copyrights.

IT IS SO ORDERED.