WHELAN ASSOCIATES, INC.

v.

JASLOW DENTAL LABORATORY, INC., et al.

Civ. A. No. 83–4583.

United States District Court, E.D. Pennsylvania.

May 9, 1985.

Joel S. Goldhammer, Seidel, Gonda, Goldhammer, P.C., Philadelphia, Pa., Irwin S. Rubin, Rubin, Glickman, Steinberg, P.C., Louderton, Pa., for plaintiff.

Manny D. Pokotilow, Caesar, Rivise, Bernstein & Cohen, Ltd., Michael J. Mangan, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

By opinion and order dated January 22, 1985, 609 F.Supp. 1307. I determined that defendants willfully and intentionally infringed plaintiff's copyrights to certain computer software programs. Judgment was entered against all defendants, damages were assessed and plaintiff was awarded counsel fees and costs. Thereafter, both sides filed a series of motions, briefs and responses.

Defendants moved to set aside the findings of fact, conclusions of law and judgment, and to grant a new trial or amend the findings, conclusions and judgment whereby judgment would be entered for defendants. Plaintiff also filed a motion to amend the judgment seeking a further accounting, prejudgment interest and a slightly increased award of damages. Plaintiff's counsel filed a motion to award counsel fees of $187,568.91 plus $14,537.90 in costs. All motions are vigorously contested by the opposite party. Further complicating the matter, following the January 22, 1985 order and judgment, defendants obtained new counsel—this being the third law firm that defendants have utilized in this action—who belatedly, on March 15, 1985, filed a brief on the motion for a new trial that addresses issues not raised in the timely filed motion.

■ Plaintiff's motion seeks a further accounting for the Dentcom IBM–PC licenses sold after the last day of the trial, July 11, 1984. The plaintiff is entitled to such an accounting, and the judgment will be amended to require one. I note that this will further delay final disposition of this case, thereby delaying the time when this case may be ripe for appellate review. Considering the apparently limited practical effect much of this litigation will have, the litigation appears to be an exercise in mutual destruction. Nevertheless, this additional accounting is proper if my prior determination as to liability is correct.

■ Plaintiff seeks both postjudgment and prejudgment interest. Postjudgment interest is granted as a matter of course pursuant to 28 U.S.C. § 1961. I doubt that it is necessary that the judgment specifically state that it will bear interest, because postjudgment interest is nondiscretionary. *White v. Bloomberg,* 360 F.Supp. 58 (D.Md. 1973), *aff'd,* 501 F.2d 1379 (4th Cir.1974); *Blair v. Durham,* 139 F.2d 260 (6th Cir. 1943). The rate of interest would be established as required by 28 U.S.C. § 1961(a). The judgment will be amended to specifically require postjudgment interest.

■ I decline to award prejudgment interest in this case. *Duplate Corp. v. Triplex Safety Glass Co.,* 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274 (1936), established the common-law rule for patent cases that prejudgment interest is generally awarded from the date on which damages become

liquidated, but may be awarded from the date of infringement, even in the absence of liquidation, if there are "exceptional circumstances." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983), reaffirmed that in patent cases the federal common-law rule precluded prejudgment interest on unliquidated damages except where there was bad faith or other exceptional circumstances. By analogy, the same rule would appear to apply for copyright infringement.

■ There is no statutory provision for prejudgment interest in copyright cases, as there now is in patent cases. Although there are some elements of bad faith and misconduct by defendants, I do not find exceptional circumstances warranting an award of prejudgment interest. In addition, plaintiff has suggested no practical way in which such interest could be computed; *i.e.*, upon what amounts and from what dates.

■ Plaintiff requests that the set-off allowed defendants be reduced by $3,500 by reason of testimony provided by plaintiff's principal witness, Elaine Whelan. This is a factual issue, which I have determined in favor of defendants. Although finding of fact 33 may inaccurately state that defendants' claimed set-off was not disputed, defendants did present credible evidence as to the amount of commissions owed to them.

Defendants' requests and motions to amend findings, conclusions and the judgment all center around their basic contentions of noninfringement. I have found to the contrary. The findings are, to the best of my ability, based upon the evidence of record. Defendants' post-trial motions do not persuade me to change the findings, the conclusions or the judgment as to liability.

The primary issue to be decided upon the post-trial motions is the right to counsel fees and costs. As a part of the judgment entered on January 22, 1985, plaintiff was awarded costs and counsel fees. Plaintiff in its post-trial requests for judgment sought as part of its relief that it be awarded "its costs and attorney's fees incurred in connection with this action and the dismissed Montgomery County [state court] action." Plaintiff's post-trial brief contained only a single short paragraph on its claim for attorney's fees wherein plaintiff made the somewhat gratuitous suggestion that because "litigation costs far exceed any profits made on sales of the system" unless attorney's fees were awarded, plaintiff "will have gained little."

So far as I can presently ascertain from reviewing the very extensive post-trial motions and briefs, defendants presented no argument against awarding counsel fees to the prevailing party. However, because defendants consistently maintained that they did not infringe any copyright and were not liable to plaintiff, defendants logically contended that they should be the prevailing party. Had I so ruled, obviously defendants would not have been liable to plaintiff for attorney's fees.

■ Following entry of judgment, plaintiff filed an application for $187,568.91 in attorney's fees plus $14,537.90 costs.[1] Ostensibly, the fee petition was filed in accord with the requirements of the Third Circuit Court of Appeals as announced in *Lindy Brothers I* and *Lindy Brothers II* and their progeny. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) (*Lindy Bros. I*) and 540 F.2d 102 (3d Cir.1976) (*Lindy Bros. II*).

Not surprisingly, defendants vigorously oppose the application for attorney's fees and costs, both as to amount and as to the right to the award of any attorney's fees in

---

**1.** Defendants' brief in response to the application for attorney's fees asserts (p. 23) that this sum, if granted in full, would appear to make such fee the second largest ever awarded under the Copyright Act, the largest being in *Landsberg v. Scrabble Crossword Game Players, Inc.*,

212 U.S.P.Q. 159 (C.D.Cal.1980), *vacated,* 736 F.2d 485 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Whether this is correct has no bearing on the decision in the present case.

this case. In light of the lack of briefing by either party on the issue of entitlement prior to the entry of judgment, I will reconsider so much of the prior decision as awarded counsel fees and costs.

Section 505 of the Copyright Act, 17 U.S.C. § 505, provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

■ Under prior copyright law, the award of full costs other than attorney's fees was mandatory. *Marks v. Leo Feist, Inc.*, 8 F.2d 460, 461 (2d Cir.1925); *Amsterdam v. Triangle Publications, Inc.*, 189 F.2d 104 (3d Cir.1951). Under the present statute, however, costs are discretionary, and, presumedly, could in appropriate circumstances be awarded to the losing, rather than the prevailing, party. *Kepner-Tregoe, Inc. v. Carabio*, 203 U.S.P.Q. 124 (E.D. Mich.1979). Attorney's fees, however, may only be awarded to the prevailing party. There is little case law to provide sure guidance as to the factors that should be considered in determining whether to award costs and attorney's fees.

Professor Nimmer in his treatise on copyright law, 3 *Nimmer on Copyright*, § 14.10(D), states:

> On the other hand, an attorney's fee may not be awarded if the losing party was driven to litigation by an over-technical position taken by the prevailing party, or if a novel or complex question of law is involved and the losing party is acting in good faith.

Obviously, the "over-technical position" has no application to this case. However, both parties in extensive briefs, during the trial and during oral arguments, consistently stressed that both the factual and legal issues were novel and complex. Certainly, the basic issues of what constitutes infringement of a computer program, and the methods of proof of infringement are not clearly defined by pre-existing case law. Is the property that is subject to copyright protection solely the source code that is registered with the copyright office, or does it include the manner in which the source code, in combination with the object code, controls and operates the functions of the computer? These, and similar issues explore relatively new areas of copyright law. They constitute novel and complex issues.

Wholly apart from copyright law, the case presented difficult and complex factual issues essential to determining contractual relationships between the parties. Defendants have consistently maintained that by reason of various contractual and business relationships with plaintiff and third parties, extending over a period of years, defendants were either the sole owners or the co-owners and co-authors of the source code and computer program that was copyrighted by plaintiff. Although I ruled against such claims by defendants, these defenses were neither frivolous nor dilatory.

■ I ruled that the infringement by defendants was willful and deliberate in the sense that the actions taken by defendants were done knowingly and intentionally, and with full knowledge of plaintiff's claim of exclusive ownership of the computer system. Most cases have required that there be some element of bad faith in the actions taken or in the litigation posture of a losing party before it is saddled with the opponent's counsel fees. Bad faith usually involves some action taken while subjectively recognizing that such action is tortious, illegal or otherwise wrongful. I found that defendants' conduct was violative of plaintiff's copyrights; that Rand Jaslow, the primary actor on behalf of the defendants, surreptitiously and without authority took possession of a copy of the source code; and that "other business conduct [of the defendants] was reprehensible and in many instances tortious." Nevertheless, I conclude that the defendants, throughout this dispute between the parties, relying in no small measure upon competent legal ad-

vice, sincerely believed that they were legally entitled to take the actions which they took, at least as to the copyright infringement claims.

In *Roy Export, etc. v. Columbia Broadcasting System*, 503 F.Supp. 1137, 1155 (S.D.N.Y.1980), *aff'd*, 672 F.2d 1095 (2d Cir.), *cert denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), the court denied a prevailing plaintiff an award of attorney's fees even though the court determined that (1) the infringement by CBS was deliberate; (2) CBS clearly increased plaintiff's expense of litigation by delaying tactics and uncompromising positions; and (3) plaintiffs assumed substantial risk and expense in presenting the action. In addition, the jury awarded punitive damages which arguably established "bad faith." The court ruled:

> In deciding whether an award of attorney's fees is appropriate, a determination of bad faith depends not only on whether a defendant deliberately used copyrighted material which it had been denied permission to use, but also on whether the defendant genuinely believed that, nevertheless, it had the legal right to make such use.

If that is the proper test, plaintiff in this case should not be awarded counsel fees.

■ The net result of my analysis of the existing case law and the facts of this case lead me to conclude that an award of attorney's fees would not be appropriate in this case. The classic American common-law rule requires each side to bear its own counsel fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Congress has permitted the courts, in their discretion, to award counsel fees to the prevailing party, but this does not mean that such should routinely be granted. *See Encyclopedia Britannica Education Corp. v. Crooks*, 542 F.Supp. 1156, 1186–87 (W.D.N.Y.1982); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 915 (D.Conn.1980); *Kepner-Tregoe, Inc. v. Carabio*, 203 U.S.P.Q. 124, 139 (E.D.Mich. 1979).

Section 411 of the Copyright Act, 17 U.S.C. § 411, provides that, in an action for copyright infringement of the type alleged in the complaint, an action may not be maintained "until registration of the copyrighted claim has been made." Section 412 of the Act, 17 U.S.C. § 412, provides that in such an action no attorney's fees shall be made for:

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

The first copyright registration was filed August 6, 1983 (finding of fact 18). Defendants contend that the court's findings have determined that "infringement commenced" before August 16, 1983, and that the copyright was not registered until more than three months after the computer system was first "published" by being fixed in a usable computer program. Consequently, defendants contend that attorney's fees are affirmatively precluded by statute. Defendants argue, therefore, that the court has no basis for the exercise of the discretion provided under 17 U.S.C. § 505 as to attorney's fees.

It is far from clear from the record when the first infringement "commenced." Dentcom, Inc. was formed on August 1, 1983 (finding of fact 23), and at "about that time, Dentcom, Inc. started to advertise and aggressively market infringing copies of the Dentalab system." (findings of fact 29 and 31). Rand Jaslow, the person primarily responsible for the infringements, developed the infringing IBM–PC system over several months starting around January 1, 1983. In mid-August, 1983 there was an infringing sale of a license to Cooper Laboratories by the defendants. (finding of fact 31 and trial transcript 2.57).

Plaintiff filed its first copyright claims on August 16, 1983, for the purpose of litigation and in order to comply with 17

U.S.C. § 411. Plaintiff had been granting licenses on its Dentalab system for several years prior to registration. Consequently, whether the Dentalab system is treated, for purposes of 17 U.S.C. § 412, as an unpublished or a published work, it would appear that there was at least one act of infringement by defendants prior to the copyright being registered. If treated as a published work, by reason of the source code being incorporated into the computer, the first publication obviously took place far more than three months prior to the registration of the copyright.

Plaintiff, apparently recognizing that the late registration of the copyright may bar all right to attorney's fees, makes two arguments that defendants' infringement did not commence prior to the registration. Neither argument is valid.

In somewhat of a reversal of positions, plaintiff asserts that there was but a single license sold by defendants prior to the copyright registration. This sale, plaintiff contends, was to install an experimental model (a so-called Beta site) that was different from the later, improved infringing programs. I find that the license that was sold was an infringement, even though later infringing programs may have had improvements. No case law suggests that an infringer may, with impunity, market an experimental, albeit infringing, computer program. The sale by defendants, prior to plaintiff's copyright registration, was the "commencement" of infringement.

Plaintiff's second contention is that the sale of each license is a discrete infringement. According to this contention, even if there were prior sales and infringement before the copyright registration, such did not constitute the "commencement" of infringement as to the later license sales. In other words, plaintiff contends that 17 U.S.C. § 412, in the context of this case, would bar only attorney's fees for the separate infringement or infringements that occurred prior to the date of registration. Plaintiff offers no suggestion as to how such allocation of fees could be calculated.

Case law as to what constitutes the "commencement" of infringement is quite sparse. Cases seem to recognize that a simple discrete act of infringement occurring before copyright registration bars attorney's fees under 17 U.S.C. § 412. *Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.*, 542 F.Supp. 252, 267–68 (D.Neb.1982); *Streeter v. Rolfe*, 491 F.Supp. 416, 421–22 (W.D.La.1980). Unquestionably, one of the purposes of the present copyright act was to encourage registration. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 158, 1976 U.S.Code Cong. & Adm.News 5659, 5774. The award of statutory attorney's fees replaces the common-law rule against allowances of fees. Interpreting "commencement of infringement" as the time when the first act of infringement in a series of on-going discrete infringements occurs (*i.e.*, the first infringing sale in a series of on-going separate sales) would best promote the early registration of a copyright. It would strongly encourage prompt registration.

It is my conclusion that the infringement by defendants, for which this action was successfully maintained by plaintiff, commenced prior to August 16, 1983, the registration date of the copyright in question. Although there were other and continuing acts of infringement of copyright after August 16, 1983, for which plaintiff was entitled to an award of its actual proved damages, attorney's fees are precluded by 17 U.S.C. § 412.

Finally, it should be noted that, even if attorney's fees and costs would be appropriate in this case, plaintiff's application in its present form would have to be rejected. Plaintiff seeks, in its application, attorney's fees (and possibly costs) in connection with a civil action litigated in state court between the parties, which plaintiff asserts is identical to defendants' counterclaim in this action. Regardless of whether the court might have the discretionary right to include such fees in an award of attorney's fees, I would not do so in this case. The attorney's fees award provision under the Copyright Act should, except

possibly in very unusual circumstances, be limited to attorney's fees incurred in that federal litigation. The fee petition does not specify, segregate or allocate in any way the division of time and services rendered between the federal action and the state action. Therefore, the fee petition cannot be approved in its present form in any event.

I conclude that attorney's fees and costs will not be awarded in this case. Section 412 of the Copyright Act, 17 U.S.C. § 412, precludes the award of attorney's fees. Alternatively, for the reasons heretofore stated, I decline to award attorney's fees and costs, to the extent that the court has the discretionary right to do so.